Ossowski, Plaintiff in error, vs. Wiesner and others, Defendants in error.

*November 1 — November 22, 1898.*

*Landlord and tenant: Lease: Change of terms: Appeal: Damages for delay.*

1. A landlord who accepts from his tenant, whose lease has several years to run, a check for a sum less than the monthly rent stipulated in the lease, upon the face of which is written, "In full for rent for saloon property for month of July, 1896, under agreement made July 7, 1896, that in future tenancy shall be from month to month at $90 per month," and retains the same with full knowledge of what it contains, is bound by it as a valid agreement changing the lease, both as to the nature of the tenancy and the amount of rent.

2. The discretion vested in the supreme court by sec. 2951, Stats. 1898, to give damages to the defendant in error or respondent for delay, will not be exercised unless the writ of error or appeal was clearly frivolous and taken in bad faith.

ERROR to review a judgment of the circuit court for Portage county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

The complaint shows that plaintiff in error leased to defendants *Wiesner* a certain building owned by him for a term of five years from July 1, 1893. The rent was to be $1,300 per year, payable monthly in advance. The lease was in the usual form. As security for the payment of the rent

Ossowski vs. Wiesner and others.

and the performance of the covenants of the lease on the part of the *Wiesners*, the other defendants joined with them in the execution of a bond, which is fully set out in the complaint. The plaintiff claims default in the payment of rent which became due on the 1st days of May, June, and July, 1897, and judgment for $325 was demanded. The answer admitted the execution of the lease and bond mentioned, and alleged that on July 8, 1896, the parties entered into an agreement by the terms of which the rent payments were reduced from $108.33 to $90 per month after July 1, 1896, and that thereafter the *Wiesners* were to hold the premises from month to month; that thereafter the parties acted under said agreement, the *Wiesners* paying, and plaintiff receiving and receipting for rent in full, at the rate of $90 per month, down to May 1, 1897; that the *Wiesners* duly served notice terminating their tenancy on July 1, 1897, and duly vacated the premises. They also alleged a tender of the rent due for May and June, and set up a counterclaim for repairs, amounting to $400. The counterclaim was replied to, and the issue so formed was submitted to a jury, who returned a verdict for plaintiff for $185. On the trial the plaintiff waived his right to claim rent at the rate specified in the lease, and the case was submitted to the jury on the theory that the recovery should be at the rate of $90 per month. The recovery not being in excess of the tender, judgment was entered for the defendants for costs. The plaintiff brings error to review this judgment.

For the plaintiff in error the cause was submitted on the brief of *Cate, Sanborn, Lamoreux & Park.*

*John H. Brennan*, for the defendants in error.

BARDEEN, J. The several errors relied on for a reversal of this judgment may be reduced to the single proposition that the verdict is against the weight of the evidence. There are no exceptions to the introduction of evidence, and no

fault is found with the judge's charge to the jury. Plaintiff's brief contains a long and exhaustive discussion of the evidence (in violation of Supreme Court Rule IX), in which he seeks to convince this court that the verdict of the jury ought not to be sustained. The earnestness of counsel has led this court to review the evidence presented with great care, and to deliberately consider the points suggested as being fatal to the defendants' case.

The main grounds of controversy were whether the original lease had been changed as to the amount of rent reserved, and also whether there had been a change of the tenancy to one from month to month. It was admitted by plaintiff on the trial that *Wiesner* was "kicking about hard times," and that as to the rent coming due in July, 1896, he made him a present of $18.33, and then accepted a check for $90 in full for the rent then due. Thereafter he was to occupy the building at the same rate while times were hard, and when times got better *Wiesner* was to pay in full. As to the change in the tenancy, he enters his unqualified denial. *Wiesner* testified as to the agreement set up in his answer, and produced a check dated July 8, 1896, for the sum of $90, payable to the order of *Nick* and Mary Ossowski, upon which the following statement was written: "In full for rent for saloon property for month of July, 1896, under agreement made July 7, 1896, that in future tenancy shall be from month to month at $90 per month." The check was indorsed by *Nick* and Mary Ossowski. Plaintiff's explanation of the circumstance is that he did not know the check contained any writing other than the call for the amount of money named. In this he is directly contradicted by the cashier of the bank. Mr. McDill testified that plaintiff came in with the check, and asked him what the writing was on it; that he read it over to him and asked him if that was his agreement with *Wiesner*, and he replied that it was. Jerome Barker also testified that plaintiff showed him the

Ossowski vs. Wicsner and others.

·check, and that he read it over to him. Another witness
said he saw Barker in the saloon, and that they had a check
there, and asked him if he wanted to see it.   *J. D. Curran,*
one of the defendants, said plaintiff frequently appealed to
him in regard to the rent, and that he told witness about
the 8th or 9th of July that he had settled with *Wiesner,* got
his money, and made a new agreement.   There are other
corroborating circumstances that need not be mentioned.

The court instructed the jury that if they were satisfied
that plaintiff and *Wiesner* made the agreement as claimed,
and that the former accepted the check in question, under-
·standing what it contained, and retained it with that knowl-
edge, it became a valid and binding agreement.   We cannot
now speculate upon the probability or improbability of the
statements of witnesses.   The case has passed the scrutiny
of the trial court, who saw the witnesses and listened to the
testimony given.   He possessed many advantages of judg-
ing of their truthfulness and candor that cannot come to the
appellate court.   He refused to disturb the verdict, and we
ought not to do so unless we can see clearly and distinctly
that it is against the weight of the evidence.   Notwithstand-
ing the able and elaborate argument of counsel for the plaint-
iff to the contrary, we think the case presents many circum-
stances supporting the conclusion arrived at by the jury.
We do not see how the jury could very well have arrived
at a contrary conclusion.   The plaintiff discredited himself.
He denied every fact and circumstance that tended against
him with the utmost particularity.   His denials were so
positive and circumstantial as to give rise to a suspicion that
he was traveling dangerously near the line of falsehood.
The case was one peculiarly for the jury, and we can find
no good reason for disturbing their finding.

We are urged to give damages to defendants for their
delay, under sec. 2951, Stats. 1898.   The discretion vested
in this court to award such damages will never be exercised

unless the appeal or writ of error was clearly frivolous and taken in bad faith. *Morse v. Buffalo F. & M. Ins. Co.* 30 Wis. 534; *Rice v. Garnhart*, 34 Wis. 470; *Northwestern M. L. Ins. Co. v. Irish*, 38 Wis. 361. We cannot say that the writ taken in this case was either frivolous or taken in bad faith.

*By the Court.*— The judgment of the circuit court is affirmed.