## Commercial Car Line, Appellee, v. John A. Anderson and Charles A. Gustafson, trading as Anderson & Gustafson, Appellants.

### Gen. No. 26,953.

1. CONTRACTS—*when executory written agreement may be changed or modified by subsequent oral agreement.* An executory written agreement may be changed or modified by a subsequent oral agreement between the parties if the latter agreement is not without consideration.

2. CONTRACTS—*existence of oral agreement modifying executory written agreement as question for jury.* Whether an oral agreement has been made, modifying an executory written agreement, is a question of fact for the jury.

3. BAILMENT—*when error to strike affidavit of merits in action for rental of tank cars.* Where the lessees of tank cars under a written agreement refused to continue the agreement unless the lessor would reduce the rental charges and the lessor agreed to a reduction by an oral agreement, such agreement was not without consideration and, in an action for rental due under the original agreement, the trial court erred in striking from the files defendants' affidavit of merits setting up the subsequent agreement and entering judgment against them without a trial upon the merits.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1921. Reversed and remanded. Opinion filed January 17, 1922.

ALDEN, LATHAM & YOUNG, for appellants; CHARLES MARTIN, of counsel.

HENRY J. and CHARLES AARON and WILLIAM H. HOLLY, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is an action of the first class commenced December 31, 1919, in the municipal court for the recovery of certain rentals claimed to be due plaintiff on

certain tank cars under a written agreement. The court on plaintiff's motion struck defendants' amended affidavit from the files as being insufficient in law, and, upon defendants electing to stand by the affidavit, entered judgment against them for the amount stated in plaintiff's amended statement of claim, $7,129.34, and this appeal followed.

In plaintiff's statement of claim the written agreement between the parties, dated October 17, 1917, and expiring October 31, 1920, is set forth *in hæc verba*. Plaintiff therein agrees to furnish to defendants 13 of its steel tank cars, 2 of which are to be delivered as promptly as possible after November 1, 1917, and 11 of which are already in defendants' possession under a previous contract expiring October 31, 1917. Plaintiff agrees to maintain the 13 cars according to present requirements of railroad companies and existing M. C. B. rules, and shall collect and retain all mileage earned by the cars and keep all records appertaining to their movements, in the keeping of which records defendants shall assist by furnishing reports as to said movements. Defendants agree to pay to plaintiff, as rental, the sum of $80 per car per month for the use of the cars payable on the first day of each month in advance, but defendants are to be credited for any loss of time due to necessary repairs on the cars. Plaintiff agrees each month to credit to the rental account of defendants all mileage earned by the cars while in defendants' service. Defendants agree to return all the cars to plaintiff upon the expiration of the agreement, and it is mutually agreed that, if either of the parties fail to reasonably promptly perform any of the covenants or agreements, the other party may terminate the agreement by giving 5 days' written notice of election so to do. On the behalf of plaintiff the agreement is executed by W. H. Tucker, its president.

It is alleged in plaintiff's statement of claim that

all rents due upon the cars, less credits, were paid by defendants to March 1, 1919, at which time defendants, though in possession of and using the cars, failed and refused to make further payments; that plaintiff, on October 10, 1919, notified defendants that it had elected to terminate the agreement on October 15, 1919, and demanded the return of the cars; that on October 14, 1919, defendants, while not conceding that they had failed to carry out their part of the agreement, notified plaintiff that they assented to its termination and would return the cars to plaintiff as soon as possible; that the cars were returned between October 24, 1919 and December 8, 1919; that defendants had the benefit and use of the cars under the agreement during all the time from prior to March 1, 1919, to the respective dates of their return; and that there is due plaintiff for the use of the cars, less mileage, etc., the net sum of $7,129.34.

It is alleged, in substance, in defendants' affidavit of merits that the written agreement of October 17, 1917, between the parties was entered into during the war between the United States and the German Empire, when tank cars were renting at abnormal and excessive rentals; that when the agreement was entered into plaintiff represented to defendants that, because of the extraordinary conditions then prevailing and the possibility of a sudden change thereof, plaintiff would, in case of such change, make a readjustment of the rental provided for in the agreement that would be just and equitable; that defendants signed the agreement upon that representation and with that understanding; that after the signing of the armistice in November, 1918, and during the following winter, conditions changed and the rental of tank cars decreased to normal prices; that it was the custom and practice of lessors of such cars, after the said change in conditions, to modify existing contracts and base rentals upon the normal market con-

ditions prevailing at the time; that in February, 1919, a controversy arose between plaintiff and defendants in regard to the rental to be thereafter paid by defendants for the use of said tank cars, and defendants notified plaintiff that they would not pay the exorbitant rentals specified and would refuse to continue said cars in their service, unless plaintiff would consent to a readjustment of the rentals and accept a reasonable rental therefor based upon normal conditions and the then prevailing market; that thereupon it was mutually agreed between these defendants and plaintiff, through W. H. Tucker, its president and duly authorized agent in that behalf, that the agreement should be abrogated as far as the rental therein provided for was concerned, and that defendants should continue to use plaintiff's said cars and thereafter pay such rental as was fair and reasonable and in accordance with the rental value then prevailing in the market; that the fair and reasonable rental value of the cars, based upon the market conditions during February, 1919, was $35 a month; that defendants relied upon said new undertaking and agreement and continued the cars in their service and paid the rents due to March 1, 1919, and performed all other conditions on their part to be performed, and offered to and have always been ready, able and willing to pay rent for the cars in accordance with the terms of said new agreement, but that due to a change of the officers of plaintiff company it refused to carry out said new agreement as made by it through its president, W. H. Tucker; that defendants deny that they refused to make further payment after March 1, 1919, and state the fact to be that although they were willing and offered to pay the rent for the cars, as agreed upon in February, 1919, as aforesaid, plaintiff refused to accept such payments and insisted upon payment of the rentals as provided in the original agreement; that defendants admit that the agreement

was terminated on October 14, 1919, as alleged, and that they' returned the cars to plaintiff as soon as possible; and that defendants deny that they are indebted to plaintiff in said sum of $7,129.34, and say that they are only indebted for the rentals of said cars at the rate of $35 per month for each car for the period beginning March 1, 1919, and during the time thereafter that each car was in the service of defendants, in accordance with said new and modified agreement, less the credits to which they are entitled, which said rentals they are willing and able to pay, but that plaintiff has refused to accept the same.

The bill of exceptions discloses that the court, after a hearing on plaintiff's motion to strike defendants' affidavit of merits from the files, announced that he was of the opinion that the new or modified agreement as set forth. therein was without any consideration and therefore of no effect, and that the affidavit failed to set forth any defense to plaintiff's statement of claim.

The question for our determination is whether defendants' amended affidavit of merits states sufficient facts as to constitute a good defense to plaintiff's statement of claim, thereby warranting a trial by jury which defendants demanded at the time they entered their appearance. Counsel for defendants here contend that defendants' affidavit sufficiently states facts showing that the written agreement of October 17, 1917, between the parties was subsequently modified as to the amount of future rentals by a verbal agreement between defendants and plaintiff, through W. H. Tucker, "its president and duly authorized agent in that behalf," and that such modification is supported by a sufficient consideration.

It is well-settled law that an executory written agreement may be changed or modified by a subsequent verbal agreement between the parties if the latter agreement is not without a good consideration.

In a note contained in L. R. A. 1915 B, where the subject of the "Consideration for new agreements abrogating, altering, supplementing, or supplanting prior contracts" is exhaustively discussed, it is said (p. 17): "Any contract, bilateral in the advantages and obligations given and assumed, may at any time after it has been made, and before a breach of it has occurred, be changed or modified in one or more of its details, by a new agreement also bilateral, by the mutual consent of the parties, without any new, independent, or distinct consideration." And it is further said (p. 44): "If, in the course of performing a contract, unexpected obstacles are encountered or new conditions arise that the parties could have neither contemplated nor reasonably foreseen, making the performance more onerous or less advantageous than was anticipated, and requiring, equitably at least, a readjustment of the contractual relations, a subsequent agreement of the parties, providing that he who is called upon to meet the new obligations shall be correspondingly compensated by an increase of remuneration or a decrease of outlay, is generally deemed to be supported by a sufficient consideration."

In *United Steel Co. v. Casey,* 262 Fed. 889, a case decided in 1920 by the U. S. Circuit Court of Appeals for the Sixth Circuit, it is said (p. 893): "Where a contract must be performed under burdensome conditions not anticipated, and not within the contemplation of the parties at the time the contract was made, and the promisee measures up to the right standard of honesty and fair dealing, and agrees, in view of the changed conditions, to pay what is then reasonable, just and fair, such new contract is not without consideration within the meaning of that term, either in law or equity." The court cited in support of its opinion several cases, among them that of *Cooke v. Murphy,* 70 Ill. 96, where it appears that plaintiffs entered into a written agreement to erect for defend-

ant two buildings for a certain price; that plaintiffs claimed that a few days thereafter the parties met and plaintiffs told defendant that they had made a mistake in their calculations of $500 against themselves and appealed to defendant's sense of right and justice either to pay them the additional sum or release them from their written agreement, and that defendant consented to pay them such additional sum, and a verbal agreement was thereupon entered into between the parties to so modify the original written agreement; that defendant denied making the verbal agreement; that the verdict of the jury on that issue was in favor of plaintiffs and judgment was entered against defendant accordingly; and that on appeal the point was made that, even conceding that said verbal agreement was made, it was void because without consideration. In affirming the judgment our Supreme Court said (p. 99): "The rule is familiar, that one promise is a sufficient consideration to support another, and that where a person does any act beneficial to another, or agrees to do so, that forms a sufficient consideration to support an agreement. Here were mutual promises, one to perform labor and to furnish materials, and the other to pay for them. Again, the performance of the labor and the furnishing materials were of benefit to appellant, and of loss and injury to appellees, and the new and additional contract was binding. Appellees refused to go on with and to perform the contract, and he agreed, if they would, he would pay them the additional sum." In this connection reference is also made to other cases, decided by the courts of review of this State, viz.: *Bishop v. Busse*, 69 Ill. 403, 407; *Low v. Forbes*, 18 Ill. 568; *Roberts v. Carter*, 31 Ill. App. 142, 146; *Dickson v. Owens*, 134 Ill. App. 561, 564.

In the *Cooke v. Murphy* and *Bishop v. Busse* cases, *supra*, one party to a written agreement refused to perform it unless the other party agreed to increase

the price to be paid, while it appears from the allegations in defendants' affidavit of merits in the present case that defendants refused to continue in the performance of the written agreement and keep the tank cars, because of the changed conditions, unless plaintiff agreed to reduce the rentals for the cars for the balance of the term of the written agreement, to which reduction plaintiff assented and the modifying verbal agreement was made. Whether such a verbal agreement was in fact made was a question for a jury to determine. But, if made as alleged, we think that under the law as above shown it was not without a consideration to support it, and our conclusion is that the trial court erred in striking defendants' affidavit from the files and entering the judgment against them without a trial upon the merits. Counsel for plaintiff here urge that the *Cooke v. Murphy* and *Bishop v. Busse* cases, *supra*, have been overruled by certain subsequent decisions. We do not find that they have been expressly overruled by our Supreme Court, and they are in line with other decisions of the Supreme Courts, of other States.

For the reasons indicated the judgment of the municipal court is reversed and the cause is remanded.

*Reversed and remanded.*

BARNES and MORRILL, JJ., concur.